**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RICHARD BARTULA** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:23cv280-HSO-BWR** |
| | § | |
| | § | |
| **MICHAEL GATWOOD, *et al.*** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MICHAEL GATWOOD AND JOHN NELSON'S MOTION [13] FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

BEFORE THE COURT is Defendants Michael Gatwood and John Nelson's Motion [13] for Summary Judgment on the Basis of Qualified Immunity. After due consideration of the Motion [13], the record, and relevant legal authority, the Court finds that the Motion [13] for Summary Judgment should be granted, and Plaintiff Richard Bartula's claims against Defendants Michael Gatwood and John Nelson in their individual capacities will be dismissed with prejudice on grounds of qualified immunity.

## I.  BACKGROUND

### A.  Factual background

### 1.  The parties' version of events

This case arises out of the traffic stop of Plaintiff Richard Bartula ("Plaintiff" or "Mr. Bartula") made by Defendant Michael Gatwood ("Deputy Gatwood") and Defendant John Nelson ("Deputy Nelson") of the Hancock County, Mississippi, Sheriff's Office on the afternoon of April 18, 2023. *See* Am. Compl. [7] at 2-3; Pl.

Dep. [13-6] at 9-10.[1]  After police received calls reporting a reckless driver whose vehicle description matched Plaintiff's truck, Deputy Gatwood attempted to initiate a stop for reckless driving but notified dispatch that "the vehicle wasn't stopping." Nelson Dep. [18-1] at 6; *see also* Gatwood Dep. [18-2] at 7-8 (discussing Plaintiff's reckless driving and trailing him with lights and sirens for "eight miles").   Deputy Nelson joined the pursuit to assist Deputy Gatwood, who continued to trail behind Mr. Bartula, *see* Nelson Dep. [18-1] at 7; Gatwood Dep. [18-2] at 7-8, during what Deputy Gatwood described as "[f]elony eluding" of law enforcement officers, Gatwood Dep. [18-2] at 15-16.  Based upon what he observed of Mr. Bartula's driving, Deputy Gatwood suspected that he "could have been drunk" or "could have been just occupied within the vehicle," such as "trying to gain access to a weapon" or "loading a weapon," because he appeared to be either "impaired or distracted."  *Id.* at 16.

Mr. Bartula eventually reached the gate at the driveway to his residence and stopped.  *See* Nelson Dep. [18-1] at 8; Gatwood Narrative [13-5] at 3; Pl. Dep. [13-6] at 16.  Deputy Gatwood exited his vehicle with his weapon drawn and approached the passenger's side of Mr. Bartula's truck, instructing Mr. Bartula to put his hands up.  Gatwood Dep. [18-2] at 14.

Deputy Nelson approached the driver's side of the truck and saw that it was open.  Nelson Dep. [18-1] at 8.  He "ran up, . . . grabbed Mr. Bartula's left arm, [and] told him to get out of the vehicle," but Mr. Bartula "pulled away."  *Id.*  According to

---

[1] Defendant Gatwood is a deputy with the Hancock County Sheriff's Office, *see* Gatwood Dep. [13-7] at 5, while Defendant Nelson is a lieutenant, *see* Nelson Dep. [13-8] at 5.

Deputy Nelson, Mr. Bartula "kept pulling away," which "felt like [Mr. Bartula] was trying to reach back into the vehicle for something, possibly, so [he] was removing him from being able to gain access to anything inside the vehicle." *Id.* at 12. Deputy Nelson "grabbed [Mr. Bartula], escorted him out of the vehicle and placed him on the ground." *Id.* Because he was unable to grasp Mr. Bartula's arm, Deputy Nelson grabbed Mr. Bartula "around his shirt and his back, torso, and just turned and placed him on the ground." *Id.* at 9. Deputy Nelson described it as "more of taking [Mr. Bartula] off balance and moving his momentum." *Id.* Deputy Gatwood then assisted with placing him in handcuffs. Nelson Supp. Narrative [13-5] at 4. Mr. Bartula was later released to emergency medical personnel and transported to a hospital, pending charges. *See id.*

According to Mr. Bartula, he later learned that he had suffered a stroke at some point during the day of the incident. Pl. Dep. [13-6] at 11, 31. When asked what he remembered from the time he left work until he arrived at the hospital after the incident with the officers, Mr. Bartula remembered pulling up at the gate and someone opening the truck's door and pulling him out. *Id.* at 16-17. After reviewing the police dashboard video of his driving that afternoon, Mr. Bartula agreed that he should not have been driving at the time. *Id.* at 12; *see also id.* at 18 (stating that, after reviewing the video, "I thought somebody stole my truck because I don't drive it that way," but "I'm sure it was me," because "[t]here ain't nobody had my truck"). But Mr. Bartula disputed that he was resisting Deputy Nelson or that he was trying to get back into the truck. *See id.* at 24. And he alleges that he was

"pulled out and thrown on the ground." *Id.* at 25.   Mr. Bartula claims that he fractured his hip as a result of the incident.   *See id.* at 38-39.

2.   <u>The summary judgment video evidence</u>

The summary judgment record contains three conventionally-filed videos of the incident— Deputy Gatwood's dashcam and bodycam videos, and Deputy Nelson's bodycam video.[2]   *See* Notice [16] (Exhibits 2, 3, and 4 conventionally filed). Exhibit 2, which is Deputy Gatwood's dashcam video, begins with him driving his police cruiser a couple of vehicles behind Mr. Bartula's truck.   *See* Ex. 2 (conventionally filed).   Deputy Gatwood passes the other vehicles and gets behind Mr. Bartula, giving him a view of Mr. Bartula's truck driving erratically, sometimes leaving the road and at other times crossing the center line and nearly hitting oncoming traffic.   *See id.*   At approximately one minute and 55 seconds into the video, Deputy Gatwood initiates his siren and attempts to stop Mr. Bartula, who continues driving for almost another eight minutes, before reaching his driveway and stopping at a metal gate.   *See id.*   Deputy Gatwood pulls in behind the truck, but after that nothing is visible on the dashcam until Mr. Bartula is taken away in an ambulance about an hour and twenty minutes later.   *See id.*

Deputy Gatwood's bodycam video, which is Exhibit 3, begins just after the truck stops, as he approaches the passenger side of Mr. Bartula's truck.   *See* Ex. 3 (conventionally filed).   Deputy Gatwood yells twice for Mr. Bartula to put his hands

---

[2] Deputy Nelson's bodycam video in Exhibit 4 is mislabeled as "Deputy Gatwood body cam footage.mp4," but it is clearly that of Deputy Nelson.   Ex. 4 (conventionally filed).   Deputy Gatwood can be seen in the video, and there is no dispute that Deputy Nelson was the one on the driver's side of the vehicle.   *See id.*

up and opens the passenger-side door.  *See id.*  Deputy Gatwood then quickly proceeds around the rear of the truck, and at about twelve seconds into the video, Mr. Bartula is seen lying on the ground, with Deputy Nelson attempting to handcuff Mr. Bartula's hands behind his back.  *See id.*

Exhibit 4 is Deputy Nelson's bodycam footage of the incident.  *See* Ex. 4 (conventionally filed).  After Mr. Bartula stops his truck, Deputy Nelson parks his police cruiser near the rear, driver's side of the truck, exits, and rapidly moves towards the truck, as Mr. Bartula opens his driver's door.  *See id.*  At about the two-second mark, Deputy Nelson grasps Mr. Bartula's left wrist, but Mr. Bartula can be seen reaching towards the passenger seat with his right hand.  *See id.*  About a second later, Deputy Nelson pulls Mr. Bartula and yells for him to get out, but Mr. Bartula says that he cannot walk.  *See id.*  There is a brief tussle,[3] and by the nine-second mark on the video, Mr. Bartula is lying on his right side on the ground.  *See id.*  Deputy Gatwood arrives within the next couple of seconds, and both officers turn Mr. Bartula onto his stomach and handcuff him behind his back. *See id.*

Deputies Gatwood and Nelson eventually help Mr. Bartula to his feet and then to the tailgate of his truck, maneuvering him to try to avoid his injured leg, and call for emergency medical personnel to evaluate him.  *See id.*; Ex. 3

---

[3] As Deputy Nelson is attempting to extract Mr. Bartula from the truck, Mr. Bartula is essentially perpendicular to Deputy Nelson.  At about the six-second mark on the video, it appears that Deputy Nelson releases Mr. Bartula's left arm and wraps his left arm around Mr. Bartula's right shoulder.   Deputy Nelson then pulls Mr. Bartula into Deputy Nelson's chest.  In light of Deputy Nelson's proximity to Mr. Bartula, the camera's view is largely obstructed for a couple of seconds by Mr. Bartula's body.

(conventionally filed).  Mr. Bartula initially declined an ambulance, but at approximately 53 minutes into Deputy Gatwood's bodycam video, he changes his mind and decides to go to the hospital, so another ambulance is called.  *See* Ex. 3 (conventionally filed).  Emergency medical technicians arrive a second time and depart with Mr. Bartula in the ambulance.  *See id.*

B.  Procedural history

On September 26, 2023, Mr. Bartula filed a Complaint [1-1] in the Circuit Court of Hancock County, Mississippi, advancing claims under 42 U.S.C. § 1983 against Defendants Hancock County, Mississippi (the "County"); Sheriff Ricky Adam ("Sheriff Adam"); Deputy Gatwood; and Deputy Nelson.  *See* Compl. [1-1] at 1, 4-5.  Defendants removed the case to this Court on the basis of federal question jurisdiction.  *See* Notice [1] at 1-2.  Mr. Bartula then filed an Amended Complaint [7], naming only Deputies Gatwood and Nelson as Defendants, each "sued individually and as a deputy sheriff of Hancock County."  Am. Compl. [7] at 1.[4]  The Amended Complaint [7] asserts claims under 42 U.S.C. § 1983 for unlawful seizure and confinement of Plaintiff's person and for excessive force.  *See id.* at 4-5.

Deputies Gatwood and Nelson have filed a Motion [13] for Summary Judgment, seeking dismissal of Mr. Bartula's individual capacity § 1983 claims against them on the basis of qualified immunity.  *See* Mot. [13]; Mem. [14].   They

---

[4]  It appears that the Amended Complaint [7] advances both individual and official capacity claims.  *See* Am. Compl. [7] at 1 (suing Gatwood and Nelson each "individually and as a deputy sheriff of Hancock County").   The present Motion [13] for Summary Judgment addresses only the individual capacity claims.

contend that their actions in arresting Mr. Bartula were objectively reasonable and did not violate his clearly established constitutional rights.  *See* Mem. [14] at 13-18.

Mr. Bartula responds that there exist genuine issues of material fact regarding Defendants' use of force to effectuate his arrest, as he was purportedly "complying with Defendant Nelson's command to exit the truck when Mr. Bartula was grabbed and thrown to the ground, causing substantial injury."  Resp. [18] at 1. According to Mr. Bartula, "[t]he only command given by Defendant Nelson was to tell Mr. Bartula to get [out] of the truck, and while Mr. Bartula was complying, Mr. Bartula was thrown to the ground."  *Id.* at 2; *see id.* at 6 (same).  "There was no need for the use of force – at all – and taking Mr. Bartula was certainly excessive and unnecessary."  *Id.* at 7.

Defendants' Reply [19] emphasizes that they both witnessed Mr. Bartula's erratic driving, nearly hitting several vehicles head on, and that Deputy Gatwood had engaged his lights and siren in an attempt to stop Mr. Bartula.  *See* Reply [19] at 2-3, 9-10.  Mr. Bartula did not stop, and Defendants had to pursue him for "about 10 minutes."  *Id.* at 2.  Mr. Bartula eventually stopped and opened his door, but as Deputy Nelson grasped Mr. Bartula's left arm, he pulled away.  *See id.* at 2-3. Deputy Nelson then "removed Bartula from the vehicle and they went to the ground," at which point Mr. Bartula was placed in handcuffs.  *Id.* at 3.  According to Defendants, "[t]hey did nothing other than apprehend a fleeing suspect, and one that showed no indication of surrender," and "the minimal force used to subdue and ultimately handcuff Richard Bartula was less than the force used in other recent cases where qualified immunity was found."  *Id.* at 13.  Even if their conduct was

somehow excessive, Defendants argue that there was no notice that such conduct violated a clearly established constitutional right, such that they are entitled to qualified immunity.  *Id.*

## II.  DISCUSSION

### A.  Relevant legal authority

### 1.  Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "Furthermore, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape."  *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam) (quotations omitted).

### 2.  Qualified immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quotation omitted).  It applies in situations where an official's conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known at the time the conduct

occurred. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

"The qualified immunity defense has two prongs: whether an official's

conduct violated a constitutional right of the plaintiff; and whether the right was

clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249,

253 (5th Cir. 2010).

> A qualified immunity defense alters the usual summary judgment
> burden of proof.  Once an official pleads the defense, the burden then
> shifts to the plaintiff, who must rebut the defense by establishing a
> genuine fact issue as to whether the official's allegedly wrongful conduct
> violated clearly established law.  The plaintiff bears the burden of
> negating qualified immunity, but all inferences are drawn in his favor.

*Id.* (citations omitted).

The Supreme Court has "repeatedly told courts not to define clearly

established law at too high a level of generality." *City of Tahlequah v. Bond*, 595

U.S. 9, 12 (2021) (per curiam).   "It is not enough that a rule be suggested by then-

existing precedent; the rule's contours must be so well defined that it is clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

(quotations omitted).

"In cases where the defendants have not acted in unison, qualified immunity

claims should be addressed separately for each individual defendant." *Darden v.

City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (quotation omitted).  Personal

involvement by a defendant is an "essential element" of establishing liability under

§ 1983.  *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (per curiam) (quoting

*Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018)).

B.    Analysis

1.    Unlawful seizure and excessive force under the Fourth Amendment

The Court must determine whether Mr. Bartula has created a material fact

question on whether either Deputy Gatwood or Deputy Nelson was personally

involved in any conduct that allegedly violated his constitutional rights, and

whether any such rights were clearly established at the time of the incident.  *See*

*Tuttle*, 68 F.4th at 975; *Brown*, 623 F.3d at 253.   Mr. Bartula's unlawful seizure

and excessive force claims arise from Defendants' allegedly grabbing his arm and

throwing him to the ground.  *See* Am. Compl. [7] at 4-5; Resp. [18] at 6.  Mr. Bartula

does not allege that their conduct in handcuffing him, or any conduct thereafter,

violated his rights.  *See* Am. Compl. [7]; Resp. [18].

The Amended Complaint [7] asserts that "[t]he unlawful actions of the

Officers . . . constituted an intrusion into Plaintiff's right to be free from an

unlawful seizure of his person."  Am. Compl. [7] at 4.   A seizure of a person

generally must be based upon probable cause particularized to that person.  *Bey v.*

*Prator*, 53 F.4th 854, 857-58 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1783 (2023).

Because Deputies Gatwood and Nelson have invoked qualified immunity, Mr.

Bartula must show not only that probable cause to seize him did not exist, but also

that the officers were objectively unreasonable in believing there was probable

cause to seize him.  *See id.* at 858.  If Defendants reasonably but mistakenly

concluded that probable cause existed, they are entitled to immunity.  *See id.*

10

The Amended Complaint [7] also raises a claim for excessive force under the Fourth Amendment.  *See* Am. Compl. [7] at 4-5.[5]  Read together, Mr. Bartula's Amended Complaint [7] and Response [18] to Defendants' Motion [13] demonstrate that he is making an excessive force claim related to "when the officers began trying to grab him and throw [him] to the ground." Resp. [18] at 6; *see id.* at 10 (arguing that "even where the officers had cause to arrest Mr. Bartula, there was no need to tackle Mr. Bartula and throw him to the ground.  Mr. Bartula was no threat to any officer on the scene.").   To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."  *Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018) (quotation omitted).

Where an officer raises qualified immunity, "the plaintiff must show that the officer's use of force violated clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (quotation omitted).   The reasonableness inquiry in excessive force cases is an objective one, meaning the focus is whether an officer's actions were objectively reasonable in light of the facts

---

[5] The Amended Complaint [7] cites the Fourteenth Amendment, but Plaintiff's claims arise under the Fourth Amendment.  *See* Am. Compl. [7] at 4-5.  "[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989)).  "[A] claim of 'excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).

and circumstances confronting him, without regard to his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). Factors a court must consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). Officers may also consider "a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance," but officers must consider the relationship between the need for force and the amount of force used. *Id.*

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (quotations and citations omitted).

2.   Plaintiff's claims against Deputy Gatwood

Although the allegations in the Amended Complaint [7] and Response [18] lump Deputy Gatwood and Deputy Nelson together, the relevant seizure was that of

Mr. Bartula's person,[6] and the alleged excessive force was the grabbing of his arm and "throwing" him to the ground. *See* Am. Compl. [7] at 4-5; Resp. [18] at 6. Viewing the evidence in the light most favorable to Mr. Bartula, but taking into consideration the video evidence, the seizure of Mr. Bartula was made by Deputy Nelson, and the alleged excessive force in taking Mr. Bartula to the ground occurred before Deputy Gatwood completely circumnavigated the rear of the truck and joined Deputy Nelson. *See* Ex. 3 (conventionally filed); Ex. 4 (conventionally filed); Gatwood Dep. [18-2] at 14.   The officers were not acting in unison during that time, *see, e.g.,* Ex. 3 (conventionally filed); Ex. 4 (conventionally filed); Gatwood Dep. [18-2] at 14, so whether they are entitled to qualified immunity must be addressed separately, *see Darden*, 880 F.3d at 731.

The competent summary judgment evidence demonstrates that Deputy Gatwood simply was not involved in Mr. Bartula being grabbed and removed from the truck, nor did he participate in taking Mr. Bartula to the ground; indeed, Deputy Gatwood had no physical contact with Mr. Bartula until after he was on the ground and being placed in handcuffs.   *See, e.g.,* Ex. 3 (conventionally filed); Ex. 4 (conventionally filed); Gatwood Dep. [18-2] at 14.  Mr. Bartula has not pointed the Court to any competent summary judgment evidence to the contrary.  *See* Resp. [18].[7] Because personal involvement by a defendant is an "essential element" of

---

[6] To the extent Mr. Bartula claims the traffic stop was an unlawful seizure, the video evidence establishes beyond dispute that Defendants had ample probable cause to stop him.
[7] During Mr. Bartula's deposition, he was asked if there was only one officer who was involved in taking him to the ground.  *See* Pl. Dep. [13-6] at 25.  He answered, "I would have thought it would have been two."  *Id*.  Defense counsel then stated that "The video shows only one.  Do you have any reason to dispute that?"  *Id*.  Mr. Bartula responded,

establishing liability under § 1983, Deputy Gatwood is entitled to summary judgment as to both § 1983 claims.[8]  *See Tuttle*, 68 F.4th at 975.

3.   <u>Plaintiff's claims against Deputy Nelson</u>

The Court must view all facts and inferences in the light most favorable to Mr. Bartula as the non-moving party, but it need not credit assertions in his Deposition [13-6] that are plainly discredited by the video evidence.  *See, e.g., Scott v. Harris*, 550 U.S. 372, 380 (2007); *Cass*, 814 F.3d at 728.

Deputy Nelson's bodycam footage shows him moving rapidly, in only about two-seconds time, from his police cruiser to the open driver's door of Mr. Bartula's truck.  *See* Ex. 4 (conventionally filed).   Deputy Nelson did not know what awaited him, particularly given the information conveyed to him concerning Deputy Gatwood's lengthy pursuit of an evading motorist.  As the driver's door is opening, Deputy Nelson grasps Mr. Bartula's left wrist, but Mr. Bartula begins to reach towards the passenger seat with his right hand.[9]  *See id*.   Deputy Nelson then pulls Mr. Bartula's arm and yells for him to get out of the vehicle, and within a few more

---

"No."  *Id.*

[8]  Even if it could be concluded that Deputy Gatwood was somehow personally involved, the indisputable video evidence demonstrates that his conduct was objectively reasonable.

[9]  Mr. Bartula disputes that he was resisting Deputy Nelson or trying to get back into his truck, *see* Pl. Dep. [13-6] at 24, but the video evidence comports with Deputy Nelson's testimony, that Mr. Bartula was reaching with or for something "back into the vehicle" with his right hand after Deputy Nelson had grabbed his left arm and instructed him to exit the vehicle, Nelson Dep. [13-8] at 12; *see* Ex. 4 (conventionally filed); *see also* Pl.'s Dep. [13-6] at 18 (testifying that he "remember[s] pulling up at [his] gate.  And [he] was going to grab a set of crutches to get out").  The Court is therefore not bound to accept Mr. Bartula's version of the facts on this point.  *See Cass*, 814 F.3d at 728 (holding that "when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape").

14

seconds, Mr. Bartula is lying on his right side on the ground, *see id.*, which is the extent of the conduct attributed to the excessive force claim, *see* Am. Compl. [7]; Resp. [18].

Based upon the undisputed facts in the record, the Court concludes that Mr. Bartula has not carried his burden of showing that Deputy Nelson acted unreasonably under the circumstances then facing him. At the time Deputy Nelson grasped Mr. Bartula's arm and pulled him out of the truck, Mr. Bartula was reaching with his right hand towards the passenger's seat, *see* Nelson Dep. [13-8] at 11-12, which had not yet been searched. In light of this, *see id.*, and the events leading up to the stop, which involved Mr. Bartula driving recklessly and seeming to evade police for approximately "eight miles," Gatwood Dep. [13-7] at 8, a reasonable officer could have believed that Mr. Bartula was either attempting to gain access to a weapon inside the vehicle or to abscond, *see, e.g., id.* at 16 (testifying that, while observing Mr. Bartula's driving, he did not know if Mr. Bartula was "drunk" or "trying to gain access to a weapon," or "loading a weapon"). Based upon the competent summary judgment evidence, Deputy Nelson's belief that there was probable cause to seize Mr. Bartula was objectively reasonable. *See Bey*, 53 F.4th at 858.

Nor has Mr. Bartula shown that his injury resulted from Deputy Nelson's use of excessive force. As discussed above, after Deputy Nelson grabbed Mr. Bartula's left arm and yelled for him to get out of the truck, Mr. Bartula reached towards the passenger's side; Deputy Nelson made the split-second decision to pull Mr. Bartula out of the vehicle and to the ground. *See* Nelson Dep. [13-8] at 11-12. Considering

15

the potential threat to the officers' safety had Mr. Bartula been reaching for a weapon and the fact that he had been actively evading the officers for about "eight miles" prior to the stop, Gatwood Dep. [13-7] at 8, Deputy Nelson's actions were objectively reasonable.

Nor has Mr. Bartula pointed to any clearly established law that rendered Deputy Nelson's actions objectively unreasonable.  The contours of existing precedent must have been so well defined at the time that it would have been clear to a reasonable officer that Deputy Nelson's conduct was unlawful in the situation he confronted.  *See City of Tahlequah*, 595 U.S. at 12.  "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."  *Id.* at 12-13 (quotations omitted).

Mr. Bartula relies upon factually distinguishable cases, including one Fifth Circuit case and two non-controlling cases from other district courts where individuals were tased.  *See* Resp. [18] at 7-8 (citing *Ducksworth v. Landrum*, 62 F.4th 209 (5th Cir. 2023);[10] *Pinedo v. City of Dallas*, No. 3:14-CV-0958-D, 2016 WL

---

[10] In *Ducksworth*, at summary judgment the plaintiff presented a video showing that he exited his vehicle in a friendly manner with his cell phone in hand and greeted the officers, explaining that he saw someone else use the car wash without paying as he then attempted to do.  The officers then told him he was banned from the car wash and must leave.   Ducksworth responded peacefully that he had since paid for his car wash and that he wanted to finish cleaning his car.
*Ducksworth*, 62 F.4th at 212.  At that point, the officers tased and seized him as he turned to leave.  *See id.* at 212-13.  The facts here are quite different and appear to share few, if any, similarities.  *See id.*

147893 (N.D. Tex. Jan. 13, 2016);[11] *Harper v. Rose*, No. 1:09-CV-153-TC, 2012 WL 1150463, at *2 (D. Utah Apr. 5, 2012)).[12]

Mr. Bartula also points to a Fifth Circuit case denying qualified immunity where physical force was employed on an individual in a vehicle. *See id.* at 8 (citing *Doss v. Helpenstell*, 626 F. App'x 453, 459 (5th Cir. 2015)). Accepting the plaintiff's version of the facts in that case as true, the Fifth Circuit found that the plaintiff: "(1) never waved the weapon [that was present], (2) had his hands on the steering wheel at all times, (3) never screamed at [the officer], (4) did not resist [the officer]'s attempt to pull him out of the car, and (5) suffered several strikes to the head while sitting in his vehicle." *Doss*, 626 F. App'x at 456-57. *Doss* is easily distinguishable from the present case; there is clear video evidence that Mr. Bartula did not have his hands on the steering wheel at all times, that he appeared to be resisting being removed from the truck, and that he did not suffer strikes to his head or any similar application of force while he was sitting in the vehicle. *See id.* Deputy Nelson's

---

[11] Mr. Bartula cites *Pinedo* for the proposition that "a reasonable officer would have known that tasing a person who was lying on the ground, handcuffed, who was no longer a threat to the safety of the officers or others, and who was neither resisting arrest nor attempting to evade arrest by flight, was excessive force that was clearly unreasonable." Resp. [18] at 7 (quoting *Pinedo*, 2016 WL 147893, at *8). At the relevant time in this case, Mr. Bartula was neither lying on the ground nor was he handcuffed. *Pinedo* is therefore inapposite.

[12] Mr. Bartula states that "the Court in *Harper* noted: 'In the moments before being tased, Mr. Harper was standing still, approximately fifteen feet from the officers. He was not told he was under arrest.'" Resp. [18] at 7 (quoting *Harper*, 2012 WL 1150463, at *2). "Harper was then tazed multiple times by the officers." *Id.* But the officer in *Harper* did not believe Harper ever reached for a weapon, and he did not verbally threaten the officer, only passively resisted commands. *See Harper*, 2012 WL 1150463, at *2. Those facts are in sharp contrast to the present case, where Mr. Bartula reached for the passenger seat as Deputy Nelson was commanding him to exit the truck. In addition to the fact that there was no taser in this case, Harper was fifteen feet from the officers, while Deputy Nelson was less than an arm's length from Mr. Bartula when he pulled away.

interaction with Mr. Bartula was very brief and lasted mere seconds, and Mr. Bartula's actions were more threatening, as they occurred while the two were merely an arm's length apart and as Mr. Bartula reached towards the passenger's seat of his truck, which had not been searched.  *See id.*

Mr. Bartula next references a 2008 Fifth Circuit case that held that under the Fourth Amendment's reasonableness test, an officer "should have known that he could not forcefully slam [a plaintiff's] face into a vehicle while she was restrained and subdued."  Resp. [18] at 9 (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).   But based upon the indisputable summary judgment evidence in this case, Mr. Bartula was not restrained or subdued when Deputy Nelson pulled him from the truck, *but see Bush*, 513 F.3d at 502, nor did Deputy Nelson slam Mr. Bartula's face into a vehicle, *but see id.  Bush* is distinguishable.  *See id.*

Finally, Mr. Bartula states that "[t]he facts of this case are also closely analogous to *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000), where the Fifth Circuit reversed a district court's grant of qualified immunity."  Resp. [18] at 10.   *Goodson* involved an interaction between a plaintiff and two officers following a be-on-the-lookout, or "BOLO," alert for an assault suspect who resembled the plaintiff.  *See Goodson*, 202 F.3d at 733-34.  According to the plaintiff's version of events, he voluntarily walked to the first officer's car and was at no point asked for identification or told that he was a suspect in an assault.   *Id.* As the plaintiff approached the car, the first officer "barked at him to put his hands on [the officer's] car," and the plaintiff claimed that "he was startled and asked if he was under arrest."  *Id.* at 734.  The plaintiff testified that the officer "told him that

18

he was being detained and to put his hands on the car, but before the plaintiff could comply, the officer grabbed his arm." *Id.*  The plaintiff "pulled his arm away from [the officer] in surprise and stumbled back in an attempt to regain his balance and maintain a little distance from the police officers." *Id.*   The plaintiff claimed that, at that point, the first officer "hit his body and [a second officer] grabbed his legs, and the two felled him with their tackle." *Id.*  The plaintiff broke his shoulder, but "they nevertheless jerked his arm back and cuffed him," as one officer yelled 'We'll teach you to run from us, you son of a bitch.'" *Id.*  The true suspect who was the subject of the BOLO was apprehended by a different officer shortly thereafter. *Id.*

First, Mr. Bartula makes no claim concerning any exertion of force once he was on the ground and being handcuffed. *See* Am. Compl. [7].  Nor has he cited any competent evidence that Deputy Nelson applied excessive force in handcuffing him. *Goodson* is distinguishable in this regard.  As for the "tackle," *Goodson* involved a person who was complying with officers by voluntarily walking toward the first officers' car and was tackled by two officers when he pulled his arm away in surprise at being told he was a suspect in an assault. *Goodson*, 202 F.3d at 733-34. Only one officer, Deputy Nelson, was involved in the takedown of Mr. Bartula, who was in his truck and reaching towards the passenger's side, which had not been searched following a lengthy pursuit.  Mr. Bartula therefore posed more of a potential threat to the safety of the officers or others than did the plaintiff in *Goodson*, and Mr. Bartula appeared to be actively resisting arrest, also making *Goodson* distinguishable.

In sum, the legal authority cited by Mr. Bartula does not "clearly establish" that Deputy Nelson violated the Fourth Amendment under the facts presented here, and his conduct was objectively reasonable under the circumstances.  Deputy Nelson is entitled to qualified immunity on Mr. Bartula's claims.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Michael Gatwood and John Nelson's Motion [13] for Summary Judgment on the Basis of Qualified Immunity is **GRANTED**, and Plaintiff Richard Bartula's claims against Defendant Michael Gatwood and John Nelson, in their individual capacities, are **DISMISSED WITH PREJUDICE**.   Plaintiff Richard Bartula's claims against Defendant Michael Gatwood and John Nelson, in their official capacities, will proceed.

**SO ORDERED AND ADJUDGED**, this the 16th day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE